## Burkholder *versus* Markley.

| | |
|---|---|
| 98 | 37 |
| e 22 SC | ¹650 |
| 98 | 37 |
| f 32 SC | ¹257 |
| 98 | 37 |
| 37SC | ²570 |

1. The rule that lines actually run and marked upon the ground are the true survey, and that they will control the calls for natural or other fixed boundaries, and also constitute the boundaries of a grant where they differ from those of the courses and distances stated in the conveyance, applies as well in cases of grants by individuals as in cases of grants by the Commonwealth.

[Burkholder *v.* Markley.]

2. Wherever, therefore, the boundary of a tract of land is in dispute, evidence is admissible to show that a line actually marked upon, the ground was at the time of the conveyance surveyed and fixed upon by the grantor and the grantee as the true boundary, and the line so fixed upon surveyed and marked will control the calls, courses and distances specified in the conveyance.

May 5th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Lancaster county :* Of May Term 1881, No. 74.

Trespass *vi et armis, quare clausum fregit,* by Jacob Markley against M. J. Burkholder, for entering on the plaintiff's land and tearing down a fence. Plea not guilty, and *liberum tenementum.*

On the trial, before LIVINGSTON, P. J., the following facts appeared : The plaintiff and the defendant were owners of adjoining tracts of land, the location of the division line between which was the subject of this dispute. Both claimed title by mesne conveyances from Samuel Moyer. The descriptions in all the deeds, under which both parties claimed, contained, *inter alia,* the following courses and distances : " Thence by other land of said Samuel Moyer, north, seventy-five degrees west, three perches and four-tenths, *to a post, thence by the same north nineteen degrees east, twenty-three perches and five-tenths, to a stone in said road,*" etc. The part in italics is the division line in dispute. This was a straight line, upon or near to which a fence was erected prior to the time of the conveyances from Moyer, and which had remained standing until a portion of it was torn down by the defendant. It was not, however, alleged in the *narr.* to be a line fence.

Upon a recent survey of the Burkholder tract, it was found that the line as described in the deeds runs through the corner of a shed annexed to a hotel building on the land of Burkholder, both of which buildings had been erected by Moyer.

The defendant offered to prove by Isaac Gingrich, his predecessor in title and the immediate grantee from Moyer of the defendant's tract, that by the agreement of purchase between himself and Moyer the hotel and shed were wholly upon the tract purchased by him, and the boundary line in question was fixed upon the ground by Moyer and himself from twelve to eighteen inches outside the said shed, so that the water falling from the roof of the shed would fall upon Gingrich's (now defendant's) land ; that the end of the said line, as then run by the surveyor on the ground, was marked by a stake and not a stone ; and that the line, as subsequently described in the deeds, differs from that line as so fixed and marked on the

[Burkholder *v.* Markley.]

ground.   Objected to; objection sustained and offer rejected; exception.

The defendant also offered in evidence the deposition of Samuel Moyer, and the court, upon objection, ruled out the portions of it which corroborated the facts stated in the above offer.

Verdict, guilty; damages assessed at $25, and judgment thereon.   The defendant took this writ of error, assigning for error the rejection of said offer, and of the portions of the deposition.

*W. W. Brown* (*S. Price* with him), for the plaintiff in error. —The court erred in rejecting evidence of the line and marks agreed upon between Moyer and Gingrich at the time of the purchase, and then actually run by the surveyor.   It is well settled that lines run and marked on the ground control the courses and distances as described in the deed, and that where the two differ parol evidence of the actual line is admissible in either ejectment or trespass: Hetherington *v.* Clark, 6 Casey 393; Poth *v.* Anstatt, 4 W. & S. 307; Souder *v.* Morrow, 9 Casey 83; Willis *v.* Swartz, 4 Casey 413; Bartle *v.* Vosbury, 3 Grant 277; Craft *v.* Yeaney, 16 P. F. Smith 210; Blasdell *v.* Bissell, 6 Barr 258; Lodge *v.* Barnett, 10 Wright 477.

The deposition of Moyer, which was excluded, showed that he proposed to put in a stone, but in fact put a stake, which still exists in place on the land, and that the stone was placed in the mid lle of the road, about twenty feet from the stake, to mark the corner of another tract, where it was found.

*S. P. Eby* and *J. L. Steinmetz*, for the defendant in error.— The attempt was to contradict by parol an unambiguous description in the deed of a line which was marked and identified by a corner-post, a fence and a stone.   Burkholder was satisfied with this true line until he found that running between the two termini it would cut off a part of his shed.   We admit that landmarks control courses and distances, but here the landmarks and the courses and distances agree.   The fact that a corner of a shed was over the line when Markley bought his tract may subject him to the easement of allowing it to stand, but it is no reason for changing the true line and shifting it six feet on his line for the whole distance.   This is not a question of title, or of reformation of the deed in equity.   The position of the line is a question of fact in the issue whether a trespass was committed.   All evidence relating to the actual marks on the ground was admitted.   Such evidence as was excluded came

within the rule that parol evidence can only be admitted to contradict, explain or reform a deed on the ground of fraud or mistake.   Miller *v.* Smith, 9 Casey 386 ; Buck *v.* Fisher, 4 Whart. 517 ; 1 Greenleaf on Evidence, § 275.

Mr. Justice TRUNKEY delivered the opinion of the court, June 20th 1881.

Samuel Moyer, by deed dated April 10th 1865, conveyed part of a tract of land to Isaac Gingrich, whose title has been vested in Burkholder.   On the 10th of May following, Moyer conveyed another part of said tract to David Ober, which part is now vested in Markley.   The line between these parcels, being the one in dispute, is described in the deeds as running from a post north nineteen degrees east, twenty-three perches and five-tenths, to a stone in the road.   Both parties agree that this is a straight line.   They also agree that a shed, built before Moyer conveyed, is still standing where it did at the time of the conveyances.   Markley claims that the line, ascertained from the courses and distances set out in the deeds, passes through that shed so that a portion of it is on his land. Burkholder claims that after Moyer had orally agreed to sell to Gingrich, and before he made the deed to him, there was an actual survey, that the line ran from a post direct to a stake, not less than twelve nor more than eighteen inches from the shed, and that the land was sold and bought by the parties with reference to said line.   If Burkholder's claim be true, then, so far as the courses and distances in the deeds show a line differing from that, they must yield.

The lines run and marked on the ground are the true survey, and when they can be found will control the calls for a natural or other fixed boundary ; and also constitute the boundaries in the grant where they differ from those produced by the courses and distances stated in the patent.   This well-settled rule in cases of lands granted by the commonwealth, applies to grants by individuals :   Blasdell *v.* Bissell, 6 Barr 258 ; Craft *v.* Yeaney, 16 P. F. S. 210.   In Craft *v.* Yeaney the testimony of the original grantor was received, the court below saying, " While it is true the deed cannot be changed, or construed, or affected by parol, it is competent to prove outside the deed that the calls in the deed are not on the ground, or that a line or boundary called for in the deed is in a different place from that contracted for by the parties, or that what is called the eastern line of warrant No. 4019 is not at the place sold and bought to."   And that was held not to be error.

Where a deed was for fifty acres of land, the quantity intended by both parties, described by existing lines on three

[Commonwealth Mutual Fire Ins. Co. *v.* Huntzinger.]

sides, and called for a south "line to be run so far south from the north line, and paralled therewith, as to include fifty acres of land," it was held competent to prove that the line agreed upon by the parties as the south line was a fence, though it differed from the one produced by the description in the deed. The grantee objected to the deed because she did not know that fifty acres would run to the fence, but the grantor assured her that fifty acres would reach the fence, that the deed embraced it, and she accepted the deed. It was said to be of no consequence whether the grantor was aware that he was making a misrepresentation, if by it the grantee did what she would not have done and was injured: Bartle *v.* Vosbury, 3 Grant 277. That decision rests on the principle that a line on the ground, fixed by the parties as the one sold and bought to, controls calls or distances stated in the deed, wherever there is fraud or mistake. The cases enforcing and illustrating the application of this principle are numerous; it would be idle to cite additional.

It may frequently occur that the location of a line which was agreed upon, cannot be determined for want of evidence. In such case the location is settled by the deed. The lines produced by the calls, courses and distances in the deed, are taken as correct, unless there be proof of a different line on the ground, which the grantor and grantee fixed as the true one.

At the trial of this case considerable evidence was rightly received, tending to show that the parties fixed a line at the time of the sale, and its location on the ground. Other pertinent and material evidence for the same purpose was rejected, and for this the judgment must be reversed. We are of opinion that all of the offers of testimony, set forth in the several assignments of error, should have been admitted.

Judgment reversed, and *venire facias de novo* awarded.