207　　95
32 SC 257
f 33 SC ¹441
207　　95
f 36 SC 66

## Marcy *v.* Brock, Appellants.

*Land law—Surveys—Courses and distances—Grant from commonwealth —Deed.*

If a survey by marked lines on the ground gave to a grantee from the commonwealth more land than the return of survey called for, the excess as between him and the commonwealth is his; all the commonwealth can command is the payment for the excess at the original price. But the owner can convey to others by his deed such parts of the original survey as he chooses, and by such description as is sufficient to identify with reasonable certainty the subject of the conveyance. He may describe the land by courses and distances alone and so that he have a known starting point the quantity can be computed with accuracy by the courses and distances.

Where a grant from the commonwealth describes a line as 314 perches running to another well marked line, and it appears that the line would have to be extended sixty perches to reach the latter line, the grantee will be entitled as against the commonwealth to the excess of land; but if he subsequently by a deed grants to another person land in which the same line is described as 314 perches to a corner, and the corner is not marked, and subsequently by another deed conveyed the excess beyond the 314 perches to still another person, the question is for the jury to determine from extraneous evidence whether the conveyance by the first deed covered all of the land included in the grant from the commonwealth.

*Appeals—Grant of new trial—Act of May* 20, 1891, *P. L.* 101.

The Supreme Court will not reverse the court below under the Act of May 20, 1891, P. L. 101, for not granting a new trial, except in the most extreme cases.

Argued April 14, 1903. Appeal, No. 12, Jan. T., 1903, by defendants, from judgment of C. P. Luzerne Co., Jan. T., 1903, No. 12, on verdict for plaintiff in case of William H. Marcy et al. v. Frank Brock et al. Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Ejectment for land in the borough of Warrior Run.    Before WHEATON, J.

The opinion of the Supreme Court states the case.

Verdict and judgment for plaintiffs.    Defendants appealed.

*Error assigned* among others were (1) in submitting the case to the jury ; (13) that the verdict was against the evidence.

A. H. McClintock and H. W. Palmer, for appellants.—Where the surveyor who lays out a warrant adopts former surveys as the boundaries of a tract, the commonwealth is bound by such lines, why therefore when a grantor adopts the line of his survey and patent for his description in his deed is he not bound by the lines on the ground, which have so often been held by this court to be the actual survey? Hines v. Kingston Coal Co., 186 Pa. 43.

The courses and distances in a deed always give way to the boundaries found upon the ground or supplied by proof of their existence, when the marks or monuments are gone : Morse v. Rollins, 121 Pa. 537 ; Lodge v. Barnett, 46 Pa. 477 ; Rook v. Greenwalt, 17 Pa. C. C. Rep. 642 ; Watson v. Jones, 85 Pa. 117 ; Blasdell v. Bissell, 6 Pa. 258 ; Murphy v. Campbell, 4 Pa. 480 ; Smith v. Oliver, 11 S. & R. 257 ; Dawson v. Mills, 32 Pa. 302 ; Craft v. Yeaney, 66 Pa. 210 ; Thompson v. McFarland, 6 Pa. 478 ; Darrah v. Bryant, 56 Pa. 69.

D. L. Rhone, with him John T. Lenahan, for appellee, cited : Carroll v. Miner, 1 Pa. Superior Ct. 439 ; Green v. Schrack, 16 Pa. Superior Ct. 26 ; Hetherington v. Clark, 30 Pa. 393 ; Means v. Presbyterian Church, 3 W. & S. 303 ; Burkholder v. Markley, 98 Pa. 37 ; Hoffman v. Danner, 14 Pa. 25.

OPINION BY MR. JUSTICE DEAN, October 12, 1903 :

This was an action of ejectment in the court below, for twenty-three acres and forty-four perches of land in Hanover township, Luzerne county.    It appeared from the evidence, that in 1802, Rufus Bennett, the elder, obtained from the commonwealth, by warrant, survey and patent a tract of land in Hanover township ; the survey and patent name the quantity as 323 acres

and allowance ; the tract in the survey and patent is described as part of lots Nos. 11, 12 and 28 in the first division of said township. The survey, actually, was made on the ground and there is standing timber to this day through which the work of the surveyor of that early day can be easily traced. It is a long and in comparison with the number of acres, a very narrow strip of land, and there is no doubt from the evidence and the admissions of both parties, that by the descriptions in the patent it includes within its boundaries the twenty-three acres here in dispute. Rufus Bennett, the patentee, had a right to convey the whole or any part of this land to any one he saw fit ; he had no right to convey the whole or any part twice ; the defendants allege he did convey this twenty-three acres twice, first in August 5, 1826, to his son Rufus H. Bennett by deed duly executed and recorded same day, and second, about a year and a half afterwards, on January 1, 1828, by deed duly executed and recorded again conveyed part of the same land to Ira Marcy. Whatever title the son Rufus H. Bennett got is represented by defendants ; whatever title Marcy got descended to these plaintiffs, his children and grandchildren. If the elder Bennett did not by his deed convey nor intend to convey the land in dispute to his son, the plaintiffs are entitled to recover. Was this piece claimed by Marcy embraced in the description of the land convey to the son ? The first line in the patent, although a copy of the original survey is not before us, is about the same line as the deed and is as follows :

" Being parts of lots No. 28, 11 and 12 in the first division situate in Hanover, one of the seventeen townships in the county of Luzerne. Beginning at a corner, thence by part of lot No. 28 south 55 deg. west 23 2–10 perches to a corner ; south 59 deg. west 18 7–10 perches to a corner ; thence by part of lots Nos. 11 and 12 south 71 deg. west 54 perches to a corner ; thence by part of No. 12 south 22 1–2 deg. east 314 perches to a corner ; thence by parts of lots Nos. 12 and 11 north 67 1–2 deg. east 54 perches to a corner ; thence by part of lot No. 11 south 22 1–2 deg. east 564 perches to a corner."

This last is the western short line of the tract and the northern long line. It will be noticed, that the distance of the first measurement of the long line is from the southwest corner of the tract 314 perches to a corner ; at this distance there is no

marked corner, nor is there any marked line from this corner by parts of lots Nos. 12 and 11 north sixty-seven and one half degree east fifty-four perches to a corner, although there is old original timber standing the length of the line; but if the line be extended the same course sixty-six and one half perches it reaches a well marked line, east fifty-four perches counting to the date of the original survey. Obviously, the surveyor either made a mistake in his measurement or in a computation of his acres within his lines; the commonwealth by its patent, granted by a line 314 perches long, the patentee got the land bounded by a marked line on the ground, the land within 380½ perches. This mistake causes all the trouble in this issue. If Rufus Bennett in the deed of 1826 granted all the land granted to him by the commonwealth in 1802 by monuments made by the surveyor on the ground, this piece conveyed by him to Marcy in 1828 was no longer his to convey but belonged to his son and therefore to defendants.

On the other hand, if the description in the deed of Rufus Bennett to his son be exactly followed, that is if the 314 perch line be stopped at its exact distance, and the line sixty-seven and one half east fifty-four perches be run, that excludes from the son's deed the twenty-three acres claimed by plaintiffs. This long line, in the deed of the father to the son, if the same rule in locating the land be followed as would have been followed in a dispute between the patentee and the commonwealth or between one claiming vacant land adjoining the Bennett survey and Bennett, would go to the marked corner and line on the ground and plaintiffs would lose their case; nothing would stop the 314 perch line short of its own monuments on the ground. But that rule does not in all cases and under all circumstances apply in description of grants between individuals. The commonwealth's grants are founded upon the official returns of its own sworn officers; they are empowered under conditions prescribed by law to make surveys and establish monuments thereof upon the ground and it is right that the commonwealth should be concluded by the acts of its own authorized agents. So here, if the survey by the marked lines on the ground gave to the elder Bennett more land than the return of survey called for, the law has for more than a century held, that as between him and the common-

wealth the land is his; all the commonwealth can demand is the payment of the excess at the original price. But the owner can convey to others by his deed such parts of the original survey as he chooses, and by such description as is sufficient to identify with reasonable certainty the subject of the conveyance. He may describe the land by courses and distances alone, and so that he have a known starting point the quantity can be computed with accuracy by the courses and distances.

When the elder Bennett conveyed to Rufus H. Bennett, it does not follow, that we must resort to the marks upon the ground made by the commonwealth officer twenty-three years before to ascertain the boundaries of the land conveyed; in case of ambiguity or if the intention be obscure, they may aid us in ascertaining the intention of the grantor, but they do not necessarily control; between individuals, it is the intention that controls, not the rules and practice of the land office, nor the statute authorizing and regulating grants of vacant land by the commonwealth.

In the case before us, the description in the deed to the son does not purport to be the description in the patent; in closely comparing the descriptions, we doubt if the patent was before the scrivener when he drew the deed; the distance of the long line from the first corner is given as 314 perches; it there calls for a corner; why should it not stop there? Appellant argues, it must go to the short northeast fifty-four perch line in the patent because, that is the call; but no reference to such patent call is made in the deed; it is not to be presumed, that because the elder Bennett got more land than he bargained for from the commonwealth he will give it away to the purchaser from him; rather, the presumption is the contrary. The short line in both patent and deed is answered by the 314 perch line whether it stops at its distance or is extended on sixty-six and one half perches. In either case, the words " by parts of lots Nos. 12 and 11 north, fifty-seven and one half east, fifty-four perches to a corner " are answered by running from the end of the distance 314 perches, or by running from the end of the extended line 380 perches.

We think the court properly held that there was a latent ambiguity when the words of the deed were applied to the

object they purported to describe; and, therefore, it was for the jury under the evidence dehors the writing to ascertain just what land was included in the description in the deed to Rufus H. Bennett.

In thus holding, we intend no departure from the well established rule that "courses, calls and distances must give way to the marks found on the ground." But what marks? The answer is, those of the survey under consideration, either made for or adopted by the grantor in the deed. But the authorities do not help us, for the answer raises the very question in dispute. And this is the reasoning by the authorities, Blasdell v. Bissell, 6 Pa. 258; Murphy v. Campbell, 4 Pa. 480; Ogden v. Porterfield, 34 Pa. 191, and other cases cited by appellant. The rule which controls this issue is that announced in Hoffman v. Danner, 14 Pa. 25, "A judge who evades to declare the meaning of a deed or other writing, commits an error, but if the instrument cannot be understood without reference to extraneous facts, the jury must judge of the whole." Neither the court below at the trial, nor we here can presume, on this evidence, that the grantor perpetrated a fraud by conveying the same land twice; land of which he knew well the quantity and boundaries.

What we have said in substance overrules all of appellant's assignments of error except the thirteenth and last by which we are again asked to reverse the court below under the act of 1891 for not granting a new trial, and Smith v. Times Pub. Co., 178 Pa. 481, is cited. Time and again we have said, we will not exercise the power conferred by that act except in the most extreme cases. We are very sure this is not an extreme case, but one where the jury might very well on the evidence find the verdict they did.

All the assignments of error are overruled and the judgment is affirmed.