## Eshleman *v.* Rankin, Appellant.

*Deeds—Descriptions—Boundaries—Survey.*

Where no monuments or marks on the ground are called for in a deed, the calls in the deed must control unless it be proved by sufficient evidence that the parties agreed upon a fixed line on the ground.

Where a fence is not called for in a deed, and there is no evidence that the fence was adopted by the parties as a division line between their properties, evidence as to the situation of the fence is inadmissible to determine the division line; but if a nick was put in the fence by a surveyor as a line mark, the location of the nick may be shown as a mark or monument on the ground.

Argued Nov. 13, 1906.    Appeal, No. 25, Oct. T., 1906, by defendant, from judgment of C. P. Lancaster Co., Dec. T., 1903, No. 5, on verdict for plaintiff in case of Martin M. Eshleman v. Joseph G. Rankin.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Reversed.

Trespass to recover damages to land.    Before HASSLER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $125.    Defendant appealed.

*Errors assigned* were (1–9) admission of various offers of testimony relating to the location of the old fence; (10–12) in disallowing offers of testimony relating to the situation of the nick or mark in the fence; (13, 14) in disallowing offers of testimony relating to the situation of the cherry tree stump; (15) portion of the charge quoted in the opinion of the Superior Court.

*D. McMullen* and *B. F. Davis*, for appellant, cited: Burkholder v. Markley, 98 Pa. 37 ; Morse v. Rollins, 121 Pa. 537 ; Rook v. Greenewald, 22 Pa. Superior Ct. 641.

*W. U. Hensel* with him *I. C. Arnold*, for appellee.

OPINION BY MORRISON, J., December 14, 1906 :

This is an action of trespass brought by Martin M. Eshleman

against Joseph G. Rankin for alleged damages to the plaintiff's property. Both parties are owners of adjoining farms in Martic township, Lancaster county. These farms belonged to Eli Eshleman in his lifetime, and after his death they were sold at orphans' court sale, the defendant purchasing the one lying on the east and the plaintiff the one lying on the west. The dispute between the parties is caused by the location of the line dividing the farms. It appears that prior to the sale a surveyor was employed to locate a division line between these farms. He started his line at Pequea creek, being the north line of the two farms, and ran south to a line of land owned by one Harnish. The parties agree that the terminal points of the line at the north and the south are correct. The original draft made by the surveyor, the petition to the orphans' court, and the decree authorizing the sale are not printed, but we understand the parties to agree that the line mentioned in all of these papers is precisely the same as found in the deeds to the plaintiff and defendant for their respective farms. The division line described in the deeds is precisely the same. It begins at the northern end at a point on Pequea creek, thence south $4\frac{3}{4}$, degrees, west $110\frac{3}{10}$ perches to a point at the beginning of Farm road; thence north 70 degrees, east $11\frac{1}{10}$ perches, thence south 8 degrees, east $121\frac{5}{10}$ perches. The dispute as to the location of this line is confined to the last of the three courses. As we understand the evidence, the surveyors employed by the respective parties to locate this line on the ground do not agree, the lines established by them varying from about $1\frac{48}{100}$ feet to $2\frac{1}{2}$ feet as shown by the testimony. It will be noticed that the division line between these farms as stated in the deeds does not call for the fence, or for any old located monuments on the ground. The plaintiff contends that an old fence, which was probably at one time a division line between the farms, is the true line, and that the survey must be made accordingly. There is no testimony in the record that the parties agreed upon this fence as the division line of the farms. The line was established by a surveyor running from the point on the north definite courses and distances till he reached the other terminal of the line at the south. This line not being marked on the ground it became of course necessary to have it located or traced by surveyors. The fence

not being called for in the deeds and there being no testimony that it was agreed upon as the line, we cannot see how it was competent to attempt to vary or change the line as described in the deeds by evidence as to the location of this fence. There is some testimony of Jacob Eshleman and Elmer Heperly, chain carriers when the first survey was made, that the line ran along the fence, but no witnesses testified that the line of the fence was actually surveyed as the line of the division agreed upon before the orphans' court sale. The testimony of these witnesses is too indefinite to require a variation of the line as called for in the deeds. Their statement that the line was run along the old fence is not equivalent to saying that the old fence was adopted as the division line. In a case like this where the difference in the two lines is only about two feet in width, the testimony that the surveyor ran the line along the old fence is too indefinite and uncertain. The chain carriers might have been several feet from the old fence, and still say truthfully that they ran the line along the old fence. The first nine assignments of error raise the question of the competency of the testimony of a large number of witnesses in reference to the line of this old fence. In the opinion refusing a new trial, the learned court cites and relies on Blasdell v. Bissell, 6 Pa. 258, but we do not think that case has any application to the facts in the present one. The syllabus of that case is as follows: " A. made a parole contract for the sale of land, and boundaries were marked. Subsequently he made a deed for the same land to the alienee of his vendee; the courses and distances in which slightly varied from the marked boundary. The lines marked on the land are to govern." In that case Chief Justice GIBSON said: " The calls of a survey and not its courses and distances are to govern; and where there are actual lines of demarcation the compass and chain are no more than instruments to point them out. Where they are not to be found, the results obtained by actual survey are the next best evidence of their location." In the present case there are no actual lines of demarcation fixed on the ground, and therefore the line must be ascertained and located by surveying the courses and distances called for in the deed. The principle established by a long line of cases from Blasdell v. Bissell to Marcy v. Brock, 207 Pa. 95, is that " the courses and distances

in a deed always give way to the boundaries found upon the ground or supplied by proof of their former existence, when the marks or monuments are gone." But the authorities all hold that where no monuments or marks on the ground are called for in the deed the calls of the deed must control unless it be proved by sufficient evidence that the parties agreed upon a fixed line on the ground, and in cases where the calls in the deed and the actual line marked upon the ground by the agreement of the parties do not agree, the line marked upon the ground must control: Burkholder v. Markley, 98 Pa. 37. In that case TRUNKEY, J., said: "It may frequently occur that the location of a line which was agreed upon cannot be determined for want of evidence. In such case the location is settled by the deed. The line produced by the calls, courses and distances in the deed, are taken as correct unless there be proof of a different line on the ground which the grantor and grantee fixed as the true one." In the present case we have seen that there is no sufficient proof of a different line on the ground than the lines produced by the calls, courses and distances in the deed, and therefore the latter must control. We find nothing in Marcy v. Brock, 207 Pa. 95, cited by the court below, to justify the admission of evidence in regard to the old fence line for the purpose of changing the line fixed by calls, courses and distances in the deeds, because there was no evidence of any other line, than the one described in the deeds, either fixed upon the ground or agreed to by the parties and authorized by the decree of the orphans' court directing sale. The learned court also cites our own case of Rook v. Greenewald, 22 Pa. Superior Ct. 641, but that was a case where the parties agreed upon a line dividing their land as indicated by an old fence, and the surveyor actually ran the division line coinciding with the line of that fence, but in making his draft for the scrivener who drew the deed he made a mistake and described the line as lying north a certain distance from the fence. What we decided in that case was that the fence on the ground having been adopted as the dividing line, and the deed not agreeing therewith, the fence line must control. But in the present case there is no evidence that the old fence was adopted as the division line between the farms. It seems clear from the evidence that the parties agreed upon the location of both ends

of the line, and the surveyor ran it by courses and distances from the northern terminus to the southern, and there being no evidence to establish any other line actually located on the ground, the problem is simply to trace the line on the ground as called for in the deeds. This view of the matter requires us to sustain the first nine assignments of error.

We must sustain the tenth, eleventh and twelfth assignments of error in so far as they raise the question of the exclusion of the evidence of the " nick " in the fence. As we understand the evidence this nick in the fence was put there by surveyor Hiller when he ran the division line, now in dispute, before the orphans' court sale, under which the parties to this suit claim title. Now it is clear that if the nick was put there as a line-mark by Hiller, and it remained there at the time referred to by the offers giving rise to said assignments, and the fence had not been moved or changed at all, then the nick was an important piece of evidence bearing on the question of the location of the Hiller line. The thirteenth and fourteenth assignments must be sustained. The plaintiff offered evidence of the location of an old cherry stump as affecting the disputed line or its location. Therefore, we think the defendant's offers contained in his thirteenth and fourteenth assignments were competent as some evidence tending to show that said stump was not regarded by former owners of the land in question as a line or corner monument. The fifteenth assignment of error is from the charge of the court as follows : " The plaintiff has shown by witnesses that the new fence erected by the defendant is some little distance, a foot or eighteen inches—you will recollect the testimony as to the distance—over on his land from where the old fence was formerly located, and that it is over on his land, he claims that distance. If you find this to be the fact, the plaintiff is entitled to recover damages for this alleged injury." This assignment of error must be sustained for the reason that we have found that the old fence was not the controlling monument in fixing the disputed line, and it is probable that the jury understood the court that if the defendant's new fence was a foot or eighteen inches from the old fence, then the plaintiff was entitled to recover. This was not the true question. What the jury should have determined was whether in fact the defendant's new fence was on the line between the

parties, or was it over on the plaintiff's land.    The fifteenth assignment is sustained.

The judgment is reversed with a v. f. d. n.