## Leuten Brick Company, Appellant *v.* Killen.

*Contract—Written agreement—Parol evidence—Affidavit of defense—Payment.*

1. In an action upon a written contract for goods sold and delivered, an affidavit of defense is insufficient, which merely sets up a prior parol agreement at variance with it, without any offer to prove at the trial that the parol terms were omitted by fraud, accident or mistake.

2. In such a case it is clearly insufficient for the defendant to aver that he was too busy to read the written contract presented to him by the clerk of the plaintiff, and took the word of the clerk that it contained the agreement which the defendant had previously made with the plaintiff, without any averment that he could not read, or that he had no opportunity to read the paper before signing it, or that the clerk had outlined certain facts to him as contained in the paper which were not there, or did any other overt thing to mislead or deceive him.

3. An averment in an affidavit of defense that the plaintiff "accepted" something in payment of its claim is the averment of a conclusion and as such is insufficient to prevent a summary judgment.

Argued Jan. 15, 1912.    Appeal, No. 308, Jan. T., 1911, by plaintiff from order of C. P. No. 5, Phila. Co., June T., 1911, No. 4650, discharging rule for judgment for want of a sufficient affidavit of defense in case of Leuten Brick Company v. James D. Killen.    Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ.    Reversed.

Assumpsit for goods sold and delivered.

The opinion of the Supreme Court states the case.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Henry A. Hoefler,* for appellant.

*Leon H. Folz,* with him *Stanley Folz,* for appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, February 19, 1912:

The plaintiff sued upon a written contract under seal between it and the defendant, dated April 29, 1910. By the terms of this contract the plaintiff agreed to furnish bricks for a building operation of the defendant at stipulated prices, in quantities as ordered by the latter, and the defendant agreed, inter alia, to pay $2,400 in the form of six promissory notes dated as of the last delivery of the bricks and payable in ninety days thereafter, and to give as collateral six properties subject to certain mortgages, which properties were to be held in trust by a trust company, and in the event of the non-payment of the notes at maturity to be conveyed to the plaintiff as collateral security for the $2,400 debt. The plaintiff averred that the houses were so conveyed to its nominee and that subsequently, after notice to defendant, they were sold at public auction; but that instead of anything being realized from the collateral the settlement showed a deficit of $2,308.

The defendant filed an affidavit of defence in which he denied that the bricks were purchased under the aforesaid written contract, and averred that they were furnished in pursuance of an oral agreement made February 1, 1910, with Robert Paschall, general manager of the plaintiff company, whereby $2,400 of the account was to be paid by the conveyance to the plaintiff of the equities in the houses in question. The defendant in his affidavit admits signing the written contract sued upon, but attempts to evade his liability thereunder by averring that his signature "was procured fraudulently through artifice and misrepresentation;" that "Sometime in June, 1910, after the plaintiff had entered upon the performance of its oral contract, and a large part of the brick work of the operation had been completed, for which it had supplied all the bricks

under said contract, one Mr. Wallace, a clerk in the employ of the plaintiff corporation, called on the defendant ..... and stated that he had a paper ..... which the Company wished him to sign. The defendant at the time was busily engaged in a matter with one of his foremen which preoccupied his mind, and requested that the paper be left with him, and that if it was all right the defendant would sign it and return it to him the next day. Thereupon Wallace told the defendant that the paper in question simply contained the arrangement and agreement he had made with Paschall and that the company would like to have it in the shape of a writing so that it might be filed away for future reference. Upon the faith of this explanation as to its contents, the defendant attached his signature to the paper ..... without reading it or having it read to him. The defendant avers that he executed the said agreement in the manner and under the circumstances stated, upon the faith and in the belief that the statement made by William Wallace was true, that he never would have signed said agreement if the contents thereof had been correctly stated to him;" and, "That afterwards, upon completion of the operation, the defendant procured a conveyance to be made of the premises ..... to Edward Atkins, president of the plaintiff corporation, which requested the conveyance to be made to said Atkins instead of to the plaintiff. The defendant averred that the plaintiff accepted the said conveyance in full payment of its claim of $2,400 under said contract and that said Edward Atkins now holds, and that he has ever since held, the said premises for the benefit of the plaintiff." The Court below held the affidavit of defence sufficient and discharged the rule for judgment; from which order the plaintiff has appealed.

A comparison of the written contract and the alleged oral agreement shows identical terms, except in the important particular, that by the former the properties

were to be collateral for the $2,400, and according to the latter they were to be taken "in absolute payment thereof." The defendant did not deny the delivery of the bricks or the correctness of the prices charged, but attempted to set up the defense that the bricks were not delivered under the written contract because that document was procured by fraud, and that the properties had been accepted by the plaintiff in full payment of the $2,400. The averments in the affidavit do not bring this case within Gandy v. Weckerly, 220 Pa. 285, and like cases, dealing with broken promises which served as inducements to the signing of written contracts. In substance the defense is a clear attempt to impeach a written instrument by showing a prior parol agreement at variance with it, without a proper offer to prove that the parol terms were omitted by fraud, accident or mistake. The substance of the averment is simply that the defendant was too busy to read the written contract and took the word of a clerk that it "contained the arrangement and agreement which he had made with Paschall." The defendant does not say that he could not read, that he had no opportunity to read the paper before he signed it, that the clerk outlined certain facts to him as contained in the papers which were not there, or did any other overt thing to mislead or deceive him. It was the duty of the defendant to read the paper before he signed it, and the mere general statement of the clerk as to its contents did not relieve him from this obligation or constitute such an inducing cause at the time of the execution of the contract as would bring this case within the line of authorities to which we have adverted. It may well be that the paper, according to the understanding of Paschall, did represent the agreement which the defendant had made with the plaintiff, and, in the absence of the averment of facts showing or tending to show fraud, accident or mutual mistake, the defendant, by placing his signature to the paper, must be held to

have adopted that understanding as his own, and prior oral agreements were merged in the written contract: Greenfield's Estate, 14 Pa. 489; Penna. R. R. Co. v. Shay, 82 Pa. 198, 203; Hicks v. Harbison-Walker Co., 212 Pa. 437, 441; Rinker v. Ætna Life Ins. Co., 214 Pa. 608, 611; Waslee v. Rossman, 231 Pa. 219, 231; Bright v. Siggins, 2 Pa. Superior Ct. 106; Lewis v. Dunlap, 5 Pa. Superior Ct. 625; Youngstown Electric Light Co. v. Poor District, 21 Pa. Superior Ct. 95; Schmitz v. Roberts, 26 Pa. Superior Ct. 472.

The averment "that the plaintiff accepted the said conveyance in full payment of its claim of $2,400" is materially faulty in that it fails to state any date or particulars; to say that one "accepted" something in full payment, is merely to aver a conclusion.    If the defendant desired to stand upon this defense, it was his duty to give the facts upon which it was based, so that the Court might determine whether such facts, if proved, were sufficient to justify the conclusion.    The conveyance referred to by the defendant is evidently the same one which the plaintiff avers, and which the written contract shows, to have been a transfer of the properties as collateral.    Under the circumstances we feel that the affidavit of defense was insufficient and that the judgment should have been entered for the plaintiff.

The assignment of error is sustained, and the record is remitted to the court below with directions to make the rule absolute and enter judgment for the plaintiff.